UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In Re:

JAMES E. WILKINSON,                                   Chapter 13
                                                      Case No.: 10-62223

                              Debtor.
_____
APPEARANCES:

PETER A. ORVILLE, P.C.                                PETER A. ORVILLE, ESQ.
*Attorneys for Debtor*
30 Riverside Drive
Binghamton, New York 13905

BOND, SCHOENECK & KING, PLLC                          CHARLES J. SULLIVAN, ESQ.
*Attorneys for Melinda Wilkinson*                     THOMAS L. KENNEDY, ESQ.
One Lincoln Center
Syracuse, New York 13202

RICHARD S. HARTUNIAN                                  WILLIAM F. LARKIN, ESQ.
United States Attorney
*Attorney for the Farm Service Agency*
James M. Hanley Federal Building
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-6100

MARK W. SWIMELAR, ESQ.                                MAXSEN D. CHAMPION, ESQ.,
*Chapter 13 Standing Trustee*
250 South Clinton Street
Suite 203
Syracuse, New York 13202


Honorable Diane Davis, United States Bankruptcy Judge

**MEMORANDUM-DECISION AND ORDER**

       This matter came before the Court upon a motion by James E. Wilkinson ("Debtor") seeking nunc pro tunc authorization for the auction sale of sixty-nine cows, payment of the auctioneer's commission and expenses, and distribution of the net sales proceeds in the

approximate amount of $52,000.00 to Melinda Wilkinson ("Melinda"), as the first lienholder and purchase money secured party, with the balance, if any, to the United States Department of Agriculture ("USDA"). While the Farm Service Agency ("FSA") of the USDA did not object to the auction sale, or to the retention or payment of the auctioneer, it did object to Debtor's classification of Melinda as the first lienholder and, hence, payment of the net proceeds to Melinda rather than to FSA.

The Court heard the matter on August 18, 2011, at which time the Court granted the motion in part and reserved in part on the question of the parties' entitlement to the net sales proceeds. Pursuant to the Court's September 1, 2011 Order (the "Order"), the net sales proceeds are currently being held by the Chapter 13 Trustee ("Trustee") pending the Court's issuance of this Memorandum-Decision and Order. The parties have submitted post-hearing memoranda of law on this narrow question. Accordingly, the Court must now determine whether Melinda's failure to file a post-petition UCC-1 continuation statement renders her security interest unperfected as against FSA's security interest, thereby moving FSA into first position. After consideration of the parties' post-hearing submissions, the Court now makes the following findings of fact and conclusions of law to the extent required by Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).

## JURISDICTION

The Court has core jurisdiction over the parties and subject matter of this dispute pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), and (b)(2)(K).

# FACTS

Debtor is the owner and operator of Maple Lane Farm located in Cazenovia, New York (the "Farm"). The acreage upon which the Farm is situated is owned by Melinda, who is Debtor's mother. The Farm is devoted to dairy cattle, corn, and soybeans. On January 1, 2005, Debtor purchased the Farm's herd of dairy cattle from Melinda pursuant to an Asset Purchase Agreement (the "Sale"). As part of the Sale, Debtor executed and delivered to Melinda a Promissory Note (the "Note") securing the principal indebtedness in the amount of $106,642.67. Melinda filed a UCC-1 Financing Statement on March 30, 2006 (the "MW UCC-1 Filing"), which perfected a first priority security interest granted to Melinda in connection with the Sale. Nearly three years later, on April 1, 2009, FSA filed a UCC-1 Financing Statement (the "FSA UCC-1 Filing") covering Debtor's livestock.

Debtor filed a voluntary petition for Chapter 13 relief on August 16, 2010 (the "Petition Date"), listing in Schedule D both Melinda and FSA as secured creditors. As of the petition date, the balance stated on FSA's claim was $208,537.28. Upon request of the Trustee in connection with Debtor's sale motion, Melinda confirmed that the present balance due under the Note is $45,863.94. Debtor's Chapter 13 Plan (the "Plan") was confirmed on December 7, 2010, with payment in full to both Melinda and FSA occurring outside the Plan. On June 24, 2011, Debtor sold certain cows through an auction conducted by Jack Wood's Sale Barn (the "Auction"). The Auction netted approximately $59,515.50. The Order authorized payment to the auctioneer in the amount of $6,770.50, leaving the Trustee with a balance on hand in the amount of $52,745.00.

**ARGUMENTS**

FSA contends that the MW UCC-1 Filing lapsed on or about March 30, 2011, more than six months after the Petition Date, thus rendering Melinda's security interest unperfected and changing her status to that of either a general unsecured creditor or a secured creditor whose claim is junior in priority to that of FSA.  It is FSA's contention that Melinda was required to file a UCC-1 continuation statement pursuant to New York Uniform Commercial Code ("NYUCC") § 9-515(c)  notwithstanding Debtor's intervening bankruptcy case and that such filing was not stayed by 11 U.S.C. § 362(a).  Specifically, FSA asserts that because property rights are generally determined by state law, in the absence of a conflict between the Bankruptcy Code and the NYUCC, New York's state law extension requirements in determining lien priority must be recognized.  FSA references the 2001 amendment to NYUCC § 9-515, which deleted the former tolling provision and, in so doing, highlights the comments thereto regarding the imposition of a new burden on a secured party to ensure that a financing statement does not lapse during bankruptcy.  FSA also points to a significant body of New York case law requiring strict compliance with NYUCC filing requirements, including, but not limited to, *In re Parkway Knitting Mills*, 119 F.2d 605 (2d Cir. 1941), *cert. denied*, 314 U.S. 646 (1941) (requiring strict compliance with lien law statute addressing chattel mortgages).  Further, FSA contends that 11 U.S.C. § 108(c) did not toll the time period for Melinda to file a UCC-1 continuation statement.

Notwithstanding the FSA's statutory arguments, Melinda's position is that a post-petition UCC-1 continuation statement–or the lack thereof– is not determinative of the present dispute. Rather, Melinda contends that the post-petition lapse of the MW UCC-1 Filing does not result in the loss of her security interest or secured status because the critical date for determining the respective rights of the debtor and the debtor's creditors is the date of filing of a petition in

bankruptcy.  In support of her lien preservation argument, Melinda cites, among other cases, *In re Bond Enterprises, Inc.*, 54 B.R. 366 (Bankr. D. N.M. 1985), *Great American Ins. Co. v. Merchants and Planters Bank*, 2008 U.S. Dist. LEXIS 23006 (D. W.D. Tenn. Mar. 21, 2008), and *In re Delia Brothers, Inc.*, 1980 Bankr. LEXIS 4534 (Bankr. S.D.N.Y. Sept. 4, 1980), for the proposition that bankruptcy principles control such that the rights of the debtor, creditors, and the trustee are fixed at the time of the bankruptcy filing.  In the same vein, Melinda points to *In re Pruitt*, 401 B.R. 546 (Bankr. D. Ct. 2009), wherein the district court held that the ultimate amount, character, and class of a creditor's claim for purposes of treatment inside bankruptcy are determined by federal bankruptcy law rather than state law.

Further, Melinda argues that the 2001 amendment to NYUCC § 9-515 is irrelevant because the overwhelming majority of state and federal cases decided under this and similarly worded Uniform Commercial Code provisions both pre- and post-amendment defer to bankruptcy law in holding that the relative positions of secured creditors are determined as of the petition date.  In other words, Melinda suggests that the tolling language provided no substantive value to the statute but rather served merely as clarification that a UCC-1 continuation statement was not required to be filed post-petition, thus making its removal also inconsequential.  Provided the lien in question is valid under state law as of the petition date, Melinda contends that state law influence goes no further and, thus, does not dictate the outcome in bankruptcy.

In summary, Melinda suggests that FSA's position that state law controls is overly simplistic and flawed because, as the official comment continues to state, a post-petition lapse is "of no effect to the extent that federal bankruptcy law dictates a contrary result (e.g., to the extent that the Bankruptcy Code determines rights as of the date of the filing of the . . . petition)." N.Y. U.C.C. § 9-515 cmt. 4 (Consol. 2011).  Melinda asks this Court to follow the existing line

of case law wherein courts have routinely recognized that an intervening bankruptcy proceeding during the effective date of a filed financing statement relieves the secured creditor from then having to file a continuation statement. Finally, Melinda asserts that Debtor's inclusion of her as a secured creditor in the Plan and the December 6, 2010 Order of Confirmation solidify that her indebtedness is secured by the cows auctioned at the Sale.

## DISCUSSION

The Court and the parties agree that this matter presents a straightforward, narrow question of law. Having now reviewed the parties' submissions and the case law cited therein, the Court is persuaded that Melinda's position is correct.

The Court begins its analysis with certain observations regarding the legislative history underpinning NYUCC § 9-515, which is entitled "Duration and Effectiveness of Financing Statement: Effect of Lapsed Financing Statement," and which now provides that "a filed financing statement is effective for a period of five years after the date of filing," N.Y. U.C.C. § 9-515(a) (Consol. 2011), and, in all situations, secured creditors must file continuation statements "only within six months before the expiration of the five-year period," *id.* § 9-515(d). Prior to New York's adoption of Revised Article 9 in 2001, the former version of this section, then codified at NYUCC § 9-403, specifically addressed the issue of an intervening bankruptcy by providing that if a continuation statement was not filed after a period of five years, the financing statement would lapse except where a debtor entered bankruptcy before the lapse, in which case the lapse was tolled until sixty days following the termination of the bankruptcy proceeding. *See In re Chaseley's Foods, Inc.*, 30 B.R. 452, 454 n.1 (Dist. Ind. 1983) (quoting former N.Y. U.C.C. § 9-403(2)). With New York's adoption of Revised Article 9, effective July 1, 2001, came the deletion of the tolling provision from current NYUCC § 9-515.

FSA attributes great significance to the Legislature's removal of the tolling language from this statutory provision coupled with the directive contained in Official Comment 4 to Revised Article 9. Comment 4, entitled "Effect of Debtor's Bankruptcy," states:

> Under former Section 9-403(2), lapse was tolled if the debtor entered bankruptcy or another insolvency proceeding. Nevertheless, being unaware that insolvency proceedings had been commenced, filing offices routinely removed records from the files as if lapse had not been tolled. Subsection (c) deletes the former tolling provision and thereby imposes a new burden on the secured party: to be sure that a financing statement does not lapse during the debtor's bankruptcy. The secured party can prevent lapse by filing a continuation statement, even without first obtaining relief from the automatic stay. See Bankruptcy Code Section 362(b)(3). Of course, if the debtor enters bankruptcy before lapse, the provisions of this Article with respect to lapse would be of no effect to the extent that federal bankruptcy law dictates a contrary result (e.g., to the extent that the Bankruptcy Code determines rights as of the date of the filing of the bankruptcy petition).

*Cite.* FSA focuses upon the "new burden" language by arguing that the 2001 deletion of the tolling rule results in a new requirement for secured parties to file continuation statements during bankruptcy if they wish to maintain their perfected status throughout the pendency of the bankruptcy case.

FSA's reading of the Legislature's act, however, ignores the remainder of the Comment which nods to entrenched bankruptcy law and policy traditionally freezing parties' interests at the time of filing and tolling a post-petition affirmative obligation to file a continuation statement or lapse in perfection. As the court in *In re Bond Enterprises, Inc.* observed, "the critical time for determining the respective rights of a debtor and its creditors is the date of the filing of a petition in bankruptcy." *In re Bond Enterprises, Inc.*, 54 B.R. at 369 (citing *Lockhart v. Garden City Bank & Trust Co.*, 116 F.2d 658 (2d Cir. 1940)). The court therein continued to quote Supreme Court precedent holding that "'valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved.'" *Id.* (quoting *Isaacs v. Hobbs Tie & Timber Co.*, 282 U.S. 734, 738 (1930)). Applying these principles, the majority of courts that have considered the

issue of post-petition lapsing of a security interest during the pendancy of a bankruptcy proceeding in the context of state statutes without a bankruptcy tolling provision, as is the case here, have held that a properly filed financing statement does not lapse on the expiration of the original statement. *Id.* (collecting cases). While a creditor's priority, vis-à-vis other creditors, is determined by state law, as FSA correctly asserts, the relevant question in light of an intervening bankruptcy is one of timing–at what temporal period should the bankruptcy court determine the parties' respective interests? As did the court in *In re Bond Enterprises, Inc.*, this Court unequivocally finds itself in agreement with the majority position, which freezes the parties' position as of the date of filing, believing that to conclude otherwise would upset a fundamental tenet of bankruptcy that property interests are determined as of the petition date.

Further, because Congress specifically permitted acts to maintain or continue perfection of an interest in property by creating an express exception to the automatic stay when it amended 11 U.S.C. §§ 362(c)(3) and 546(b), the tolling language itself became obsolete. Secured creditors are now permitted–but not required to–file continuation statements notwithstanding the pendency of a bankruptcy proceeding. In this Court's view, a secured creditor who fails to file a post-petition continuation statement is protected within the bankruptcy proceeding but accepts the risk that the debtor's bankruptcy proceeding may fail, thus leaving them to contend with competing parties under the NYUCC in the aftermath of an unsuccessful bankruptcy proceeding.

**CONCLUSION**

For the foregoing reasons, the Court holds that a creditor's security interest, perfected and valid at the commencement of a bankruptcy proceeding but due to expire during the pendency of the bankruptcy case, does not lapse where the creditor fails to file a post-petition continuation statement. Accordingly, FSA's limited objection to Debtor's sale motion is overruled and the Trustee is directed to release proceeds in the amount of $45,863.94 to Melinda on or after the expiration of fourteen calendar days of this Memorandum-Decision and Order.

IT IS SO ORDERED.

Dated at Utica, New York
this 10th day of April 2012

/s/DIANE DAVIS_____
DIANE DAVIS
United States Bankruptcy Judge